# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CRYSTAL STARR METZ,**

    **Petitioner-Defendant,**

v.                                               **Civil Action No. 3:13-cv-175**
                                                 **Criminal Action No. 3:12-cr-57-2**
                                                 **(Judge Groh)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

## I.    INTRODUCTION

On December 6, 2013, Crystal Starr Metz ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 3:13-cv-175, Docket No. 1; Criminal Action No. 3:12-cr-57-2, Docket No. 239.) That same day, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed her that she had twenty-one (21) days to correct her Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 242.)[1] Petitioner filed her correct form ("Court-Approved Motion") on December 23, 2013. (Docket No. 245.) On April 29, 2014, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 251.) The Government filed a motion for extension of time (Docket No. 253), which the undersigned granted on July 24, 2014 (Docket No. 254). The government filed its response on August 5, 2014. (Docket No. 259.) Petitioner filed a motion for extension of time within which to file her reply (Docket No. 260), which the undersigned granted on August 22, 2014 (Docket No.

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:12-cr-57-2.

262). Petitioner filed her reply on October 6, 2014. (Docket No. 267.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II. FACTS

### A. *Conviction and Sentence*

On June 27, 2012, a Criminal Complaint was filed with the Court, in which Petitioner was charged with distribution of approximately fourteen (14) grams of cocaine base. (Docket No. 1.) Petitioner was arrested on June 28, 2012. On July 3, 2012, Petitioner waived her right to a preliminary hearing, and Magistrate Judge James E. Seibert ordered that she be bound over to the next Grand Jury. (Docket No. 18.) On July 25, 2012, the Grand Jury returned an Indictment against Petitioner and two co-defendants, in which Petitioner was charged with several drug-related counts. (Docket No. 19.) On August 16, 2012, the Government filed an Information of Petitioner's prior conviction for possession with intent to distribute cocaine base in Criminal No. 2:05-cr-7-13. (Docket No. 46.)

On August 28, 2012, Petitioner signed a written plea agreement in which she agreed to plead guilty to Count Ten of the Indictment, charging her with aiding and abetting the distribution of 10.3 grams of cocaine base. (Docket No. 55.) In the agreement, the parties stipulated and agreed that pursuant to Fed. R. Crim. P. 11(c)(1)(C), Petitioner should be sentenced to 120 months of imprisonment, to be followed by six (6) years of supervised release. (Id. at 2.) The parties also stipulated and agreed that Petitioner's relevant conduct was 66.4 grams of cocaine base and 74.09 grams of cocaine hydrochloride. (Id. at 2-3.) Petitioner further stipulated that on November 9, 2005,

2

she was convicted in the Northern District of West Virginia, Case No. 2:05-cr-7-13, of possession with the intent to distribute cocaine base and received a sentence of 108 months. (Id. at 3.) Petitioner waived her right to appeal and collaterally attack her sentence. Specifically, Petitioner's plea agreement contained the following language concerning her waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **Defendant also waives the right to challenge the sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Id. (emphasis added).)

Petitioner appeared before now-retired United States Magistrate Judge David J. Joel on September 4, 2012 in order to enter her plea of guilty. (Docket No. 256.) At the time of her plea, Petitioner was 40 years old, had earned her GED, and had completed some college and special training. (Id. at 4:7-14.) Petitioner had been treated for addiction to narcotic substances approximately twenty (20) years prior. (Id. at 4:17-24.) Subsequently, the following colloquy occurred:

> THE COURT: Do you understand that under the terms of the plea agreement, you are giving up the right to appeal the sentence imposed upon you by the Court, as well as the right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence?

      THE DEFENDANT: Yes, sir.

(Id. at 12:23-13:4.)

      Petitioner confirmed her understanding that the written plea agreement contained the full agreement between herself and the Government. (Id. at 13:18-21.) When asked, Petitioner stated that her counsel had done a good job and that he had done "everything" necessary for her representation. (Id. at 13:5-12.) The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 22:19-24:15.) Based on that review, the Court determined that Petitioner understood the consequences of her plea of guilty. (Id. at 24:13-15.) During the hearing, the Government presented the testimony of West Virginia State Trooper James Mills to establish a factual basis for the plea. (Id. at 24:22-28:16.)

      After hearing Trooper Mills' testimony, Petitioner advised the Court that she was guilty of Count Ten of the Indictment. (Id. at 28:17-24.) Additionally, Petitioner testified under oath that no one had attempted to force her to plead guilty and that her plea was not the result of any promises other than those contained in the plea agreement. (Id. at 29:2-25.) Petitioner further stated that her counsel had adequately represented her. (Id. at 30:5-11.) In conclusion, Magistrate Judge Joel found that Petitioner was competent to make a plea of guilty, that she had "full knowledge and understanding" of the consequences of entering a plea of guilty; and that there was a basis in fact for her plea. (Id. at 30:16-23.) Petitioner did not object to that finding.

      Petitioner appeared before United States District Judge Gina M. Groh for sentencing on December 3, 2012. (Docket No. 257.) At that time, Judge Groh accepted Petitioner's written plea agreement. (Id. at 5:8-11.) Petitioner's guidelines called for a term of imprisonment between 63 and 78 months; however, Judge Groh noted that the binding plea agreement called for 120 months of

incarceration. (Id. at 6:3-25.) Judge Groh sentenced Petitioner to 120 months of incarceration, to run consecutively to her sentence for revocation of supervised release in Case No. 2:05-cr-7-13, followed by six (6) years of supervised release. (Id. at 14:6-15:8.)

## B.    *Direct Appeal*

Petitioner did not file a direct appeal.

## C.    *Federal Habeas Corpus*

### 1.    **Petitioner's Motion**

In her Court-Approved Motion, Petitioner raises the following claims:

1. The 120-month sentence violates her Eighth Amendment rights because cocaine base is actually "crack" for purposes of sentencing and is not marijuana as calculated in her Pre-Sentence Report ("PSR"); therefore, Petitioner's mandatory minimum sentence was only 60 months as to her relevant conduct;

2. Based upon United States v. Simmons, the criminal history points attributed to her did not qualify as criminal history; and

3. The prior conviction included in the Information pursuant to 21 U.S.C. § 851 should have been charged in the Indictment and proven to a jury beyond a reasonable doubt pursuant to Alleyne v. United States.

(Docket No. 245 at 5-8.)

### 2.    **Government's Response**

In opposition to Petitioner's motion, the Government asserts the following:

1. Petitioner has not demonstrated that counsel was ineffective;

2. Petitioner's claims are procedurally defaulted;

3. The PSR properly relied upon a marijuana equivalency to determine Petitioner's Guidelines range;

4. The PSR properly calculated Petitioner's criminal history points; and

5

> 5. The § 851 enhancement was properly excluded from the Indictment.

(Docket No. 259 at 4-10.)

### 3. Petitioner's Reply

In her reply, Petitioner reiterates the arguments raised in her motion. (Docket No. 267.)

### III. ANALYSIS

#### A. *Applicable Law Regarding Petitioner's Waiver*

##### 1. Law Governing Waivers of Direct Appeal and Collateral Attack Rights

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732.

Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea

---

[2] The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

7

agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

### B. *Analysis of Petitioner's Claims*

### 1. Petitioner's Claims Are Barred By Her Waiver

As noted above, Petitioner waived her right to directly appeal or collaterally attack her sentence or the manner in which it was determined in any manner whatsoever. (Docket No. 55 at 3.) In her Court-Approved Motion, Petitioner now claims that if she had known that a "minimum sentence of 120 months for 10.3 grams of crack . . . is excessive and cruel under the Eighth Amendment," "she would have never accepted the terms of the plea agreement as offerred [sic] by the Government."

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but

can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

After reviewing the record, the undersigned finds that Petitioner's waiver of her right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731. At the Rule 11 colloquy, Petitioner testified that she had earned her GED, had completed some college, and could read, write, and understand English. (Docket No. 256 at 3:15-4:14.) Petitioner further testified that she had no hearing impairment or other disability that would prevent her from fully participating in the hearing. (Id. at 5:2-5.) Subsequently, the following colloquy occurred:

> THE COURT: Do you understand that under the terms of the plea agreement, you are giving up the right to appeal the sentence imposed upon you by the Court, as well as the right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence?
>
> THE DEFENDANT: Yes, sir.

(Id. at 13:23-14:4.) Petitioner also testified that she had reviewed the plea agreement with her attorney before signing it. (Id. at 13:15-17.) She stated that counsel had done a "good job," that "he did everything" necessary for her representation, and that he had adequately represented her. (Id. at 13:5-12, 30:5-11.) When asked, Petitioner again confirmed that her right to appeal was restricted by the terms contained in the plea agreement. (Id. at 24:9-12.) At the conclusion of the plea

9

colloquy, Magistrate Judge Joel found that Petitioner was competent to enter a plea of guilty and that she had "full knowledge and understanding of the consequences of the plea." (Id. at 30:16-23.) Therefore, the undersigned finds that Petitioner knowingly and intelligently waived her right to collaterally attack her sentence as part of her plea agreement.

### 2. Petitioner's Claims are Procedurally Defaulted

The undersigned has already found that Petitioner waived her right to collaterally attack her sentence as part of her plea agreement; nevertheless, he has considered Petitioner's claims on their merits. As an initial matter, in its response, the Government asserts that all of Petitioner's claims are procedurally defaulted because she did not raise them in a direct appeal to the Fourth Circuit. (Docket No. 259 at 7-8.)

Typically, the failure to raise non-constitutional issues on direct appeal results in their being deemed waived in a § 2255 motion. See United States v. Emanuel, 869 F.2d 795, 796 (4th Cir. 1989). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (internal citations omitted). To establish cause, a movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then shown by demonstrating that the error worked to a petitioner's "'actual and substantial disadvantage,'" rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would

10

have convicted him." Bousley, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas, 186 F.3d at 494.

Although she does not explicitly say so, Petitioner appears to assert that her procedural default should be excused because of counsel's alleged ineffectiveness in raising the claims she now asserts. However, the Supreme Court has held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Smith v. Murray, 477 U.S. 527, 535 (1986) (citation and internal quotation marks omitted). Accordingly, Petitioner has failed to demonstrate cause for her procedural default.

Furthermore, Petitioner cannot demonstrate actual innocence to excuse her procedural default. The Fourth Circuit has held that "ordinary misapplication of the guidelines does not amount to a miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999). Generally, "actual innocence applies in non-capital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision."[3] Id. at 495. If this were not so, the Fourth Circuit reasoned, "whenever a movant is prejudiced by the misapplication of a sentencing guideline and does not raise the error on direct appeal, a federal court may

---

[3] Recently, the Fourth Circuit held that "an erroneous application of the career offender enhancement amounts to a fundamental miscarriage of justice that is cognizable on collateral review." Whiteside v. United States, 748 F.3d 541, 551 (4th Cir. 2014). However, the undersigned notes that the finality of the Whiteside decision is uncertain, as the Fourth Circuit has granted a request to rehear the appeal *en banc*. Whiteside v. United States, No. 13-7152, 2014 WL 3377981 (4th Cir. July 10, 2014).

nevertheless correct the error during a § 2255 proceeding, entirely eliminating the cause portion of the cause and prejudice requirement." Id. at 494-95. Here, Petitioner's sentencing claims do not involve a challenge to the application of a career offender or other habitual offender guideline provision. Accordingly, Petitioner cannot demonstrate actual innocence to excuse her procedural default. Nevertheless, the undersigned has considered Petitioner's claims on their merits below.

    3.    **Claim One: Eighth Amendment Violation**

As her first claim for relief, Petitioner states that her sentence of 120 months of incarceration violates the Eighth Amendment's prohibition on cruel and unusual punishment. (Docket No. 245 at 5.) According to Petitioner, the Probation Office erred by converting her relevant conduct to a marijuana equivalency. (Docket No. 239-1 at 2.) She argues that by pleading guilty to Count Ten, her relevant conduct should have been limited to 10.3 grams of cocaine base, which would have triggered a mandatory minimum sentence of 60 months. (Id. at 2-3.) In support of her argument, Petitioner asserts that she should have been sentenced pursuant to the Fair Sentencing Act ("FSA") of 2010. (Id.)

As to her argument that the FSA should have applied to her case, the undersigned notes that the FSA "took effect on August 3, 2010." Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). The FSA "increased the drug amounts triggering mandatory minimums from crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum (while leaving powder at 500 grams and 5,000 grams respectively)." Id. The Indictment returned against Petitioner charged her drug activity that occurred throughout 2012. Accordingly, Petitioner's sentence would have been imposed in accord with the FSA. In any event, Petitioner pled guilty to Count Ten of the Indictment, which charged her with

aiding and abetting the distribution of 10.3 grams of cocaine base. (Docket No. 55.) Accordingly, she was never subject to a mandatory minimum sentence. Her prior conviction, charged in the Information pursuant to 28 U.S.C. § 851, only affected the maximum statutory term of imprisonment that Petitioner could receive; it did not subject her to a mandatory minimum. Therefore, the undersigned finds Petitioner's argument regarding the FSA to be without merit.

Petitioner also appears to argue that her relevant conduct should have been limited to 10.3 grams of crack cocaine and that a marijuana equivalency should not have been used to determine her base offense level. However, "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1 app. n.5. Indeed, in her written plea agreement, Petitioner stipulated that her relevant conduct was 66.4 grams of cocaine base and 74.09 grams of cocaine hydrochloride. (Docket No. 55 at 2-3.) In cases "[w]here there are multiple transactions or multiple drug types, the quantities of drugs are to be added." U.S.S.G. § 2D.1 app. n.7. In such cases, "[t]he Drug Equivalency Tables . . . provide a means for combining differing controlled substances to obtain a single offense level. In each case, convert each of the drugs to its marihuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level." Id. at § 2D1.1 app. n.8(B). Accordingly, the Probation Officer did not err by calculating a marijuana equivalency for determining Petitioner's base offense level. See United States v. Molina, 286 F. App'x 94, 96 (4th Cir. 2008) (rejecting argument that conversion of drug quantities to marijuana equivalency was erroneous because defendant was not involved in any marijuana transactions).

Overall, Petitioner asserts that a 120-month sentence violates her Eighth Amendment rights. The Eighth Amendment prohibits cruel and unusual punishment and implicitly requires that a

sentence be proportionate to the crime of conviction. See Solem v. Helm, 463 U.S. 277, 284 (1983). The Fourth Circuit has clarified that a proportionality review is available for a term-of-years sentence. See United States v. Cobler, 748 F.3d 570, 579 (4th Cir. 2014). To determine whether a term-of-years sentence is "grossly disproportionate for a particular defendant's crime", a court "must begin by comparing the gravity of the offense and the severity of the sentence." Graham v. Florida, 560 U.S. 48, 60 (2010). Then, "'in the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Id. (quoting Harmelin v. Michigan, 501 U.S. 957, 1005 (1991)). However, "proportionality challenges to non-capital sentences rarely will be successful, due to the 'substantial deference' that reviewing courts owe to Congress and to trial courts." Cobler, 748 F.3d at 578.

As noted above, the parties stipulated in Petitioner's written plea agreement that a term of 120 months of imprisonment was "the appropriate sentence in this case." (Docket No. 55 at 2.) Given that stipulation and Judge Groh's acceptance of such stipulation, the undersigned finds that this is not the "rare case" where a "threshold comparison . . . leads to an inference of gross disproportionality." Graham, 560 U.S. at 60. Indeed, the Supreme Court has previously upheld a forty (40)-year sentence for possession with intent to distribute and distribution of approximately nine (9) ounces of marijuana. Hutto v. Davis, 454 U.S. 370, 370-75 (1982) (per curiam). Accordingly, because Petitioner's sentence does not lead to an inference of gross disproportionality, the undersigned finds that Petitioner's Eighth Amendment rights were not violated. Therefore, her first claim for relief should be denied.

### 4. Claim Two: Erroneous Calculation of Criminal History Points

As her second claim for relief, Petitioner asserts that pursuant to United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), her previous conviction for possession of marijuana does not qualify as a prior felony conviction because it was not punishable by more than one year of imprisonment. (Docket No. 245 at 6; Docket No. 239-1 at 4.) According to Petitioner, she should have been classified as a Criminal History Level II rather than as a Level III. (Docket No. 239-1 at 4.)

Petitioner was assessed one (1) criminal history point for an April 16, 2004 conviction for possession of marijuana in the District Court for Allegany County, Maryland. (Docket No. 90 at 10.) In total, Petitioner was assessed six (6) criminal history points. (Id. at 14.) A defendant is classified as a Criminal History Category III if he or she is assessed four (4) to six (6) criminal history points. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Assuming *arguendo* that Petitioner was erroneously assessed one (1) point for her 2004 conviction for possession of marijuana, she would have remained at a Level III because she would then have been assessed a total of five (5) points. With five (5) points, Petitioner's Guidelines range would not have changed. In any event, the undersigned notes that Petitioner's criminal history did not affect her sentence, as she and the Government stipulated in her written plea agreement that she should receive a sentence of 120 months. (Docket No. 257 at 6:23-25.) Accordingly, Petitioner's argument is without merit and her claim should be denied.

### 5. Claim Three: Violation of Alleyne v. United States, 133 S. Ct. 2151 (2013)

As her last claim for relief, Petitioner asserts that the prior conviction contained in the Information filed pursuant to 21 U.S.C. § 851 "should have been charged in the indictment and proved to a jury beyond a reasonable doubt in light of Alleyne v. United States." (Docket No. 245 at 8.)

In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and "found beyond a reasonable doubt." 133 S. Ct. 2151, 2155 (2013). As an initial matter, the undersigned notes that Petitioner was not subject to any mandatory minimum sentence. (Docket No. 256 at 7:5-11, 16:22-17:2.) Furthermore, even if Petitioner had been subject to a mandatory minimum sentence, the Supreme Court did not declare this new rule to be retroactively applicable on collateral attack. See In re Kemper, 735 F.3d 211 (5th Cir. 2013); In re Payne, 733 F.3d 1027 (10th Cir. 2013); Simpson v. United States, 721 F.3d 875 (7th Cir. 2013) ( all finding that Alleyne does not apply retroactively). In addition to the Fifth, Seventh and Tenth Circuits, a number of district courts in this circuit and across the country have determined that Alleyne should not be applied retroactively for the purposes of collateral attack. See, e.g., Williams v. United States, No. 5:13-CV-00108, 2013 WL 4083274, at *2 (W.D.N.C. August 13, 2013); Smith v. Holland, No. 13-147-KKC, 2013 WL 4735583, at *4 (E.D.Ky. Sept. 3, 2013); Smith v. Fed. Bureau of Prisons, No. 9:13–384–RMG, 2013 WL 833050 (D.S.C. July 23, 2013). Additionally, Alleyne expanded upon the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), which found that facts increasing the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490.. According to the Seventh Circuit, the "Justices have decided that other rules based on Apprendi do not apply retroactively on collateral review. This implies that the Court will not declare Alleyne to be retroactive." Simpson, 2013 WL 3455876, at *1 (citing Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519 (2004)).

Furthermore, the Fourth Circuit has consistently held that the Court's decision in Alleyne did not disturb the "narrow exception to the general rule for the fact of a prior conviction." United States v. Rudolph, No. 13-4545, 2014 WL 1228555, at *1 (4th Cir. Mar. 26, 2014). Specifically, the Fourth

16

Circuit has noted that in Alleyne, "[t]he Court cautioned that its holding did not disturb judicial fact finding at sentencing for facts that do not impact the statutory punishment." Untied States v. Richmond, 558 F. App'x 317, 318 (4th Cir. 2014). Here, the prior conviction charged in the Information under 21 U.S.C. § 851 only affected the maximum statutory term of imprisonment that Petitioner could receive, not a mandatory minimum sentence. Accordingly, Alleyne would not apply even if Petitioner could benefit from retroactive application of its holding.

Additionally, the undersigned finds that Alleyne would also not apply to Petitioner's case because, by entering into a plea agreement, Petitioner waived her right to a jury trial. By doing so, Petitioner "waived h[er] right for a jury to make sentencing determinations beyond a reasonable doubt." Newlen v. United States, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W. Va. May 5, 2014) (alteration in original); see also Grantham v. United States, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W. Va. Jan. 27, 2014) (finding same).

For the foregoing reasons, the undersigned finds that Petitioner cannot benefit from retroactive application of Alleyne. Furthermore, even if she could, Alleyne would not apply to Petitioner's case. Accordingly, the undersigned finds that Petitioner's last claim for relief should be denied.

### 6.  **Claims of Ineffective Assistance of Counsel**

As part of her claims for relief, Petitioner asserts that her counsel provided inadequate representation. Specifically, as part of her Eighth Amendment claim, Petitioner asserts that counsel "should have recognized that the calculations for the term of imprisonment in the plea agreement were a violation of [her] Eighth Amendment Rights under the United States Constitution of cruel punishment." (Docket No. 239-1 at 3.) As part of her Alleyne claim, Petitioner argues that counsel

provided "critically incorrect legal advice." (Id. at 5.)

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart,

18

474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The undersigned has already found that Petitioner's underlying claims are meritless. Therefore, assuming *arguendo* that counsel's performance fell outside the "wide range of reasonable professional assistance," Carter, 283 F.3d at 249, the alleged errors had no effect on Petitioner's conviction and sentence, Strickland, 466 U.S. at 691. Accordingly, to the extent Petitioner raises claims of ineffective assistance of counsel, the undersigned finds that those claims are meritless.

## IV.　RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:13-cv-175, Docket No. 1; Criminal Action No. 3:12-cr-57-2, Docket No. 239) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and

Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Crystal Starr Metz.

DATED: October 7, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE